**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA STALNAKER, ) | CIVIL DIVISION |
| ) | |
|    Plaintiff, ) | No: 1:26-cv-0050-SPB |
| ) | |
| v. ) | Judge Susan Paradise Baxter |
| ) | |
| PARTNERS FOR PERFORMANCE, ) | |
| INC., ERIC HENRY, WAYNE ) | **ELECTRONICALLY FILED** |
| BROSIUS, and JILL FOYS, ) | |
| ) | |
|    Defendants. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| ) | |
| ) | |

<u>**BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. CIV. P. 12(B)(6)**</u>

AND NOW, come Defendants PARTNERS FOR PERFORMANCE, INC., ERIC HENRY, WAYNE BROSIUS and JILL FOYS, by and through their attorneys, MARSHALL DENNEHEY, P.C. and ESTELLE K. McGRATH, ESQUIRE, and file the within Brief in Support of a Partial Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), averring in support thereof as follows:

**I.     <u>INTRODUCTION</u>**

Despite this being Plaintiff's Second Amended Complaint, Plaintiff's allegations remain elusive and conclusory surrounding her termination from employment.[1] Regardless, Plaintiff fails

---

[1] There are no facts about what Partners for Performance does; how many individuals were at a meeting at the restaurant where she claims the Sunshine Law was being violated; who terminated her; why Plaintiff is suing two individual board members from Partners from Performance; why she is suing the Executive Director from a completely separate entity for her termination, or how her work environment became allegedly "hostile".

to state a viable First Amendment Retaliation claim against Eric Henry, Wayne Brosius and Jill Foys ("the Individual Defendants") because their conduct is not "fairly attributable to the state" despite state funding and/or state regulation.  Further, Plaintiff has failed to aver that Partners for Performance carries on activities that are exclusively reserved to the state.[2]  Moreover, even if Plaintiff could allege that they were "acting under the color of law", she has plead that she was speaking in an employee capacity, which is not protected under the First Amendment. Additionally, Plaintiff's wrongful discharge claim is preempted by her claim whistleblower claim. Also, the claims against the Individual Defendants are unsupported by any actual personal involvement.  Finally, Plaintiff's claims for punitive damages under the Whistleblower Law and under Section 1983 fail as a matter of law.

Accordingly, Defendants respectfully request that this Court dismiss Plaintiff's (1) First Amendment Retaliation Claim against the Individual Defendants (Count II); (2) Wrongful Discharge Count against All Defendants (Count III); (3) all of the Individual Defendants from the lawsuit with prejudice, and; (4) request for punitive damage claims (Counts I and II).

## II.    FACTS

Lisa Stalnaker ("Plaintiff") was the Interim Director of Partners for Performance ("PFP"), a **non-profit corporation** from October 20, 2021 until July 25, 2025.  (Am. Compl. at ¶ 2, 6, 10). Only July 2, 2025, Plaintiff attended a meeting with Eric Henry ("Mr. Henry") – the "President" of PFP, and Jill Foys ("Ms. Foys") – the Executive Director of the Northwest Pennsylvania Regional Planning and Development Commission ("Northwest Commission").  *Id.* at ¶ 3, 5, 11.

---

[2]It is also unclear how Plaintiff's claims could have changed from the original Complaint to the Amended Complaint concerning her discussion with Attorney Fera.  (Original Compl. ¶ 14 – to "discuss" the Sunshine Law and conflict of interest issued *compared to* Am. Compl ¶ 16 – to "report" the Sunshine Law and conflict of interest violations).

It was revealed that the meeting was called to discuss agency business including the PFP being taken over by the Northwest Commission. *Id.* at ¶ 12. During that meeting, Plaintiff raised concerns about a conflict of interest and about the conduct of that meeting violating the Sunshine Law. *Id.* at ¶ 13-14. At some point, Plaintiff contacted PFP's counsel to report the Sunshine Law and conflict of interest issues. *Id.* at ¶ 16. Plaintiff claims that PFP's counsel "immediately reported" Plaintiff's inquiry to Mr. Henry and others. *Id.* Plaintiff claims that after her contact with PFP's counsel, her work environment became hostile and "PFP began to inflict a series of of retaliatory acts upon Plaintiff, concluding with the termination of Plaintiff's employment for the stated reason that PFP was 'moving in a different direction.' *Id.* at ¶ 17.

Plaintiff filed the two-count Amended Complaint asserting:  Count I – A violation of the Pennsylvania Whistleblower Law against Partners for Performance; Count II – 42 U.S.C §1983- A violation of the First and Fourteenth Amendments against Eric Henry, Wayne Brosius, and Jill Foys, and Count III – A Wrongful Discharge in Violation of Public Policy against all Defendants. *See Am. Compl. Generally.*  Defendants now challenge the sufficiency of Plaintiff's claims and set forth this Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]

### III.  <u>STANDARD OF REVIEW</u>

To survive a Motion to Dismiss, the plaintiff must plead facts that set forth a "plausible" right to recovery. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007). In determining the sufficiency of a complaint challenged under Rule 12(b)(6), the court must conduct a two-part analysis. First, the court should separate the factual and legal elements of the claims. *Fowler v.*

---

[3] Undersigned Counsel conducted a meet and confer with Plaintiff's Counsel about the defects outlined in the pending motion, but Plaintiff was unwilling to further voluntarily amend the Amended Complaint, or cure any said defects, as the parties disagreed.

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief." *Id*. at 211.  Even under the federal notice pleading standard, "a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it." *Musila v. Lock Haven Univ.*, 970 F. Supp. 2d 384, 389 (M.D. Pa. 2013).

IV.    **ARGUMENT**

    A.    **PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM FAILS AS A MATTER OF LAW.**

        (1) THERE IS NO STATE ACTION TO MAKE THE INDIVIDUAL DEFENDANTS STATE ACTORS.

Plaintiff's constitutional claim fails as a matter of law, as the Individual Defendants are not state actors bringing them within the parameters of a Section 1983 claim.  The Supreme Court has explained that the "state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]'" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982) (quoting *Flagg Brothers v. Brooks*, 436 U.S. 149, 156 (1978)).

Under Section 1983, "a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Section 1983 applies to the conduct of state actors. While Section 1983 typically does not apply to the conduct of private parties, a private party may incur liability if he or she was acting under the color of state law. *Lugar*, 457. U.S. at 941.  Our Courts have defined "acting under the color of state law" as requiring the defendant in a Section 1983 action to have exercised power "'possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

In *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009), the Third Circuit Court of Appeals explained that there are three tests to determine whether state action exists:

> (1) Whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.*

Our Supreme Court has consistently emphasized that private entities are not ordinarily constrained by the Constitution.  In *Manhattan Community Access Corporation v. Halleck*, the United States Supreme Court held that a private nonprofit corporation was not a state actor subject to First Amendment constraints despite the (1) city designating the corporation to operate the public access channels on the cable system, and; (2) the city's extensive regulation of the corporation's operations.  587 U.S. 802. 814-815 (2019).  The Supreme Court explained that "a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'"  *Id.* at 809 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).  The Court explained it would not be enough if the activity was performed by the government currently, or in the past, or that the function served the public good or interest.  *Id.*  To qualify as a "state action", it would have to be a function traditionally *and* exclusively performed by the government.  *Id.*

> **The Court stressed that "very few" functions fall into that category**. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 . . . (1978). Under the Court's cases, those functions include, for example, running elections and operating a company town. See *Terry v. Adams*, 345 U.S. 461, 468-470 . . . (1953) (elections); *Marsh v. Alabama*, 326 U.S. 501, 505-509 . . . (1946) (company town); Smith

> v. Allwright, 321 U.S. 649, 662-666 . . . (1944) (elections); *Nixon v. Condon*, 286 U.S. 73, 84-89 . . . (1932) (elections). The Court has ruled that a variety of functions that do not fall into that category, including, for example: running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, and supplying electricity. See *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55-57 . . . (1999) (insurance payments); *National Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179, 197, n.18 . . . (1988) (college sports); *San Francisco Arts & Athletics, Inc. v United States Olympic Comm.*, 483 U.S. 522, 544-545 . . . (1987) (amateur sports); *Blum*, 457 U.S. at 1011-1012 . . . (nursing home); *Rendell-Baker*, 457 U.S. at 842 . . . (special education); *Polk County v. Dodson*, 454 U.S. 312, 318-319 . . . (1981) (public defender); *Flagg Bros*., 436 U.S. at 157-163 . . . (private dispute resolution); *Jackson*, 419 U.S. at 352-354 . . . (electric service).

*Id.* at 809-810. (Emphasis added). The *Halleck* Court further stated that the relevant function – the operation of public access channels on a cable system – had not traditionally and exclusively been performed by the government. *Id.* at 810. *The Court explained that the following tasks alone do not transform a private entity into a state actor*: **heavy regulation**, **government funding or subsidizing of a private entity**, **obtaining government licenses**, **contracts**, **or government-granted monopolies**. *Id.* at 814. The Court further clarified that

> [n]umerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities. As this Court's many state-action cases amply demonstrate, that is not the law.

*Id.* at 814-815.

In *Schneider v. Arc of Montgomery Cnty*, the Director of Children Services at the Arc of Montgomery County and the Arc of Montgomery County Foundation sued two nonprofit corporations alleging that she was terminated for speaking out on matters of public concern in

violation of Section 1983.  497 F. Supp. 2d 651, 652 (E.D. Pa. 2007).  The defendants moved to dismiss the complaint on the grounds that the defendants were not acting "under color of state law" and the court granted the motion finding that the defendants were not state actors.  *Id.*  The defendants provided social services to developmentally disabled individuals and received federal, state, and/or local government funding to perform the services.  *Id.* at 653.

The plaintiff in *Schneider* alleged that she was terminated after she reported the improper use of funds and retained revenues.  *Id.*  In response to her claims that she was terminated for speaking out on matters of public concern, the court analyzed plaintiff's two arguments that plaintiff believed supported her position that defendants were state actors:  (1) receipt of public funding and (2) activities within the traditional or exclusive province of the state.  *Id.* at 654-59. In response to the first argument, the court explained that the "receipt of public funding for an activity is not sufficient to infer a sufficiently 'close nexus' between Defendants and Pennsylvania such that Defendants' actions may be deemed to be Pennsylvania's, even when such funds are coupled with comprehensive regulations governing that activity."  *Id.* at 654.  The court defended its position by explaining that "[t]he Third Circuit has resoundingly rejected any argument to the contrary."  *Id.*

In response to the second argument, the court examined a long history of whether the state had a historical practice of traditionally and exclusively caring for individuals with developmental disabilities, noting such a "rigorous standard" is rarely met.  *Id.*  The court explained that " 'while many functions have been traditionally performed by governments, very few have been exclusively reserved to the state.'"  *Id.* (quoting *Graham v. City of Phil.*, 2002 WL 1608230, at *6 (E.D. Pa. July 17, 2002) (citations omitted)).  The court found that while Pennsylvania administered and funded the services for the developmentally disabled to provide "care, education

and support" to disabled individuals such services have never been a traditional and exclusive

government function. *Id.* at 656. Despite plaintiff's argument that this was a fact-specific question

requiring development, the court noted that numerous courts have granted motions to dismiss

because defendants were not state actors:

> Numerous courts, including this Court, have granted motions to
> dismiss section 1983 actions because the defendants were not state
> actors. *See, e.g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345,
> 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (affirming grant of a motion to
> dismiss); *Leshko,* 423 F.3d at 337 (affirming grant of a motion to
> dismiss); *Community Med. Ctr. v. Emerg. Med. Servs. of Ne. Pa.,
> Inc.,* 712 F.2d 878 (3d Cir.1983) (affirming grant of a motion to
> dismiss); *Mochan,* 2007 WL 655604; *Graham,* 2002 WL 1608230;
> *Klavan v. Crozer–Chester Med. Ctr.,* 60 F.Supp.2d 436
> (E.D.Pa.1999) (Dalzell, J.); *Ctr. for Bio–Ethical Reform v.
> Comcast–Spectacor, Inc.,* 1999 WL 601014 (E.D.Pa. Jul.29, 1999)
> (Kauffman, J.); *Showell,* 1997 WL 597897.

*Id.* at 659. Again, the court dismissed the amended complaint because it found that the publicly

funded, private nonprofit organization was not a state actor. *Id.* at 652.

### a.  Receipt of Public Funding

In the pending case, Plaintiff's Amended Complaint provides that "PFP is a public body

within the meaning of 43 P.S. § 1422 in that it is a body created by the Commonwealth funded

through the Commonwealth or its political subdivisions." (Am. Compl. at ¶ 2). While the

allegation refers to the Pennsylvania Whistleblower Statutory definition, Plaintiff will argue that

Defendants were acting "under color of law" because PFP was acting for an entity created by and

funded by the Commonwealth.[4] Similarly to *Schneider*, the receipt of public funding for an

activity is not sufficient to infer a sufficiently "close nexus" between the Individual Defendants

actions to be deemed Pennsylvania's actions, even if such funds were regulated by Pennsylvania.

---

[4] During the meet and confers, undersigned counsel confirmed this was Plaintiff's position.

*See Crissman v. Dover Downs Entm't,* 289 F.3d 231, 244 (3d Cir. 2002) (holding that detailed regulation and receipt of state funds to operate a horse race track, without more, did not create state action); *Leshko v. Servis*, 423 F.3d 337, 341 (3d Cir. 2005) (rejecting argument that, because Pennsylvania funded and regulated foster care services, foster parents' decisions regarding care of child constituted state activity or made them state actors).  Accordingly, government funding is not enough to make the Individual Defendants actions' (whatever those actions are alleged to have been) those of the Commonwealth, even if "created by and funded by the Commonwealth."

        **b.**    **Activities within Traditional or Exclusive Province of the State**

To survive the motion to dismiss, we expect that Plaintiff will argue that PFP is performing a function that is traditionally and exclusively within the province of the Commonwealth. However, the Amended Complaint lacks any detail as to what services PFP was performing, let alone how PFP was performing a function traditionally and exclusively performed by the Commonwealth to bring Plaintiff's termination within a state action.  Instead, Plaintiff alleges that she was terminated from PFP, a private nonprofit corporation.  (Am. Compl. at ¶¶ 2, 6).  Plaintiff avers that Mr. Henry is the President of PFP and that Wayne Brosius is a board member.  *Id.* at ¶¶ 3-4.  She also avers that Ms. Foys is the Executive Director of the NorthWest Commission and "participated in the management of PFP."  *Id.* at ¶ 5.  The Amended Complaint is simply devoid of any substantive allegations surrounding how these Individual Defendants are alleged to have violated her constitutional rights let alone how they were "acting under the color of state law." These allegations are bare-boned conclusions that need not be credited.  *Id.* at ¶ 24.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

(explaining that the court need not credit "bold assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss).[5]

Regardless, as our courts have explained "while many functions have been traditionally performed by governments, very few have been exclusively *reserved* to the state." *Graham v. City of Phil.*, 2002 WL 1608230, at *6 (E.D. Pa. July 17, 2002). (Emphasis added). Plaintiff has failed to allege facts showing that there was state action by any of the Individual Defendants. Regardless, Defendants are unable to proceed with further analyses as there are no facts plead on how any of the seemingly private behavior of the Individual Defendants may be treated as state action. See *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 468 (M.D. Pa. 2022) (granting nonprofit hospital's motion to dismiss plaintiff's constitutional claims because complaint failed to show that government was responsible for the complained of conduct). Accordingly, Plaintiff's constitutional claims fail as a matter of law and should be dismissed.

(2) EVEN IF THERE WAS STATE ACTION, PLAINTIFF FAILS TO STATE A FIRST
AMENDMENT RETALIATION CLAIM.

Alternatively, even if state action is found, Plaintiff fails to state a First Amendment retaliation claim against the Individual Defendants. To prevail on a First Amendment retaliation claim, a plaintiff must establish the following three-part test: (1) that plaintiff engaged in constitutionally protected activity; (2) the government responded with retaliation, and; (3) the protected activity caused the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). *See also Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir. 2006) (citing

---

[5] See also, *Anelli v. Arrowhead Lakes Community Ass'n Inc.*, 689 A.2d 357 (Pa. Cmwlth. Ct. 1997) (ruling that trial court properly sustained defendant's preliminary objections and dismissed complaint with prejudice as plaintiff failed to allege sufficient facts against the private nonprofit corporation to state cause of action pursuant to Section 1983 to support that the alleged deprivation was committed by a person acting under color of state law).

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)) (explaining that "in order to plead a retaliation claim under the First Amendment, plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'"). *See also*, *D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*, 552 Fed. Appx. 110 (3d Cir. 2014) (holding that to support a First Amendment retaliation claim " a plaintiff must prove that (1) that [she] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation")   For First Amendment protections to apply, the public employee's speech must address a matter of public concern rather than a personal grievance. *Connick v. Myers*, 461 U.S. 138, 147 (1983).

In *D & D Associates, Inc. v. Board of Educ.*, a contractor entered various contracts with a school board for renovations and then filed suit.  552 F. App'x 110 (3d Cir. 2014).  The Court explained that the "'[w]here the speaker is a government employee, that person 'must show that he or she spoke as a citizen on a matter of public concern.'  This test, 'adjusted to weigh the government's interests as contractor rather than as employer,' applies to government contractors like D&D." *Id.* at 114.  The court explained that plaintiff could not prove that he engaged in constitutionally-protected activity "because the speech in question was in D&D's capacity as a contractor, not a citizen, and therefore not constitutionally protected." *Id.* at 115.  D& D claimed it was retaliated against for making false statements and for attempting to meet with other contractors. *Id.*  However, the District Court concluded that the speech was made in an employee capacity, which was not protected by the First Amendment. *Id.*  D&D did not challenge the conclusion that the relevant speech was in its capacity as an employee. *Id.*  The Third Circuit

explained that because there was no underlying constitutionally protected speech, it was unnecessary to reach the other steps. *Id.*

Similarly here, Plaintiff avers that Defendants terminated her employment in retaliation for "exercising her rights under the First and Fourteenth Amendments . . . by speaking on a matter of public importance and were intended to chill Plaintiff from speaking publicly about the violations of law she observed." (Am. Compl. at ¶¶ 25). Even taking those allegations as true, a careful review of the Amended Complaint reveals that the only speech Plaintiff alleges is at a "strategic planning meeting" that she refers to as a board meeting on July 2 (stating she was uncomfortable with conducting business at a non-public meeting and raised a conflict of issue) and at another board meeting on July 18 (objecting to the conduct of the executive session). *Id.* at ¶¶ 12, 13, 19. Plaintiff avers that she was invited to the first meeting to "update a plan that hadn't been updated since 2017" and once she attended further agency business was discussed. *Id.* at ¶¶ 11-12. During her attendance at the second board meeting, the board rejected her objection. *Id.* at ¶ 19. Like *D & D*, the complained-of speech was done in her capacity as an employee and as such was not protected by the First Amendment. Plaintiff does not, and cannot aver, that her speech was in the capacity as a private citizen, as she was acting in her role as the Executive Director of PFP. See also, *Connick v. Myers*, 461 U.S. 138 (explaining that when a public employee sues a government employer under the First Amendment that employee must show she spoke as a citizen on a matter of public concern). Accordingly, Plaintiff's First Amendment retaliation count fails as a matter of law and should be dismissed.

### B.  PLAINTIFF'S WRONGFUL DISCHARGE CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's wrongful discharge claim fails as a matter of law. The Pennsylvania Supreme Court has generally supported that an employer may terminate an employee with or without cause, for any reason, unless restrained by a contract or statute. *Shick v. Shirley*, 716 A.2d 1231 (Pa.

1998). However, the privilege to terminate an employee has been qualified by public policy. *Id.* Courts in Pennsylvania have recognized limited public policy exceptions including filing workers compensation claims (*Geary v. U.S. Steel Corp.*, 319 A.2d 174, 176 (Pa. 1974), filing unemployment claims (*Highhouse v. Avery Transp.*, 660 A.2d 1374, 1378 (Pa. Super. 1995), refusing to take polygraph tests (*Kroen v. Bedway Sec. Agency*, 633 A.2d 628, 633 (Pa. Super. 1993), refusing to commit a crime (*Mikhail v. Pennsylvania Org. for Women*, 63 A.3d 313, 319 (Pa. Super. 2013) and participating in jury duty (*Reuther v. Fowler & Williams, Inc.*, 386 A.2d 11, 120 (Pa. Super. 1978). The Supreme Court has clarified that the public policy exception is not to be liberally construed. See *McLaughlin v. Gastrointestinal Specialists, Inc.,* 750 A.2d 283, 287 (2000) (stating "[a]n employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstance where the termination implicates a clear mandate of public policy in this Commonwealth").

There are only three exceptions to the narrow at-will employment doctrine: "an employer (1) cannot require an employee to commit a crime; (2) cannot prevent an employee from complying with a statutorily imposed duty; and (3) cannot discharge an employee when specifically prohibited by statute. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d. Cir. 2003). However, the Third Circuit Court of Appeals has held that under Pennsylvania law, an action for wrongful discharge may only be asserted if there is no available statutory remedy for the aggrieved employee. *See Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 899 (3d Cir. 1983). Courts have specifically applied this rule to bar common law claims where a plaintiff had a cognizable claim under the Whistleblower Law. *See Angelini v. U.S. Facilities, Inc.*, No. CV 17-4133, 2018 WL 3155995, at *12 (E.D. Pa. June 27, 2018) (finding plaintiff could not plead a common law discharge claim because plaintiff plead a Whistleblower claim in the amended

complaint and therefore dismissed the wrongful discharge claim simply because plaintiff alleged

both counts n amended complaint).  See also, *Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D.

Pa. 1992) (explaining a cause of action could only be maintained in the absence of a statutory

remedy and dismissing the wrongful discharge claim because plaintiff had an appropriate statutory

remedy under the Whistleblower Act).

In *Brader v. Allegheny Health Network*, the Superior Court reversed the trial court and held

that a doctor's availability of a statutory remedy under the MCARE Act precluded his common

law wrongful discharge claim based on public policy.  349 A.3d 210 (2025).[6]  The Court clarified

that this view aligned with their sister court's approach:

> The Commonwealth Court has determined that the Whistleblower
> Law preempts common law wrongful discharge claims based on the
> Whistleblower Law.  *Javitz v. Luzerne Cnty.*, 334 A.3d 505, 521 (Pa.
> Cmwlth. 2025) ("[The a]ppellant's common law tort claim for
> wrongful termination is based on the same factual 'whistleblowing'
> assertions which form the basis of her Whistleblower Law claim.
> Because the Whistleblower Law provides [the a]ppellant with a
> preemptive statutory remedy, her common law claim for wrongful
> termination is barred."); *Perry v. Tioga Cnty.*, 168 Pa. Cmwlth. 126,
> 649 A.2d 186, 189 (1994) ("Perry contends, however, that even if
> he was an at-will employee, his discharge was against public policy.
> He contends that there is a clear public policy against discharging
> an employee for reporting wrongdoing.  To advance that public
> interest, the General Assembly enacted the Whistleblower Law to
> provide public employees with protection against retaliation for
> reporting wrongdoing.  It is the sole and exclusive remedy by which
> such a claim can be brough against a governmental employer. . . . .).

*Id.* at 228.

---

[6] The Court found that their prior decision in *Denton v. Silver Stream Nursing and Rehab Ctr.*, 739
A.2d 571 (Pa. Super. 1999), which allowed both the Whistleblower Law claim and the common
law wrongful discharge claim to proceed was not binding as "the issue of preemption was not
raised, argued, or adjudicated in that case.  Thus, we do not consider *Denton* to be binding on this
issue."  *Brader v.  Allegheny Health Network*, 349 A.3d 210, 228 (2025).

Here, Plaintiff has set forth a claim under the Whistleblower Law.  *See* Am. Compl. at Count I.  Since the Whistleblower Law affords a statutory remedy to Plaintiff, the Whistleblower Law preempts her common law wrongful discharge claim.  Therefore, she may not state a claim for a wrongful discharge claim against PFP, as those claims are preempted by her Whistleblower claims.[7]

### C.    THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

The Individual Defendants should be dismissed.  Individual capacity claims seek to impose personal liability upon an official for actions he or she takes under color of state law.  *See Cahill ex rel. Cahill v. Live Nation*, 866 F. Supp. 2d 503, 520 (W.D. Pa. 2011), *aff'd sub nom.  Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227 (3d Cir. 2013).  However, as this Court has observed:

> A mere invocation of "individual capacity" in a complaint is not necessarily determinative on whether a plaintiff sued the defendant in his personal capacity if it is clear that the substance of the allegations is against the defendant for actions taken in his official capacity.

*Szerensci v. Magistrate Daniel C. Shimshock*, No. 20-1296, 2021 WL 4480172, at *4 (W.D. Pa. Sept. 30, 2021).  After all, to establish personal liability, it must be pleaded and proven that the official, acting under color of state law, caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Liability under 42 U.S.C. §1983 can arise only where an official had "personal involvement" in the alleged wrong.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); see

---

[7] Moreover, Plaintiff's wrongful discharge claim is borne out of the same allegations arising out of her Whistleblower claim.  *See* Am. Compl. at Count III at ¶ 28  (asserting that the termination was the result of the reporting or intending to report the wrongdoing of the Defendants in violation of the Whistleblower Law constitutes Wrongful Termination under the common law).  As such the claims are duplicative.

also, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (in §1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Our Courts have explained that the

> [f]ederal notice and pleading rules require the complaint to provide "the defendant fair notice of what the…claim is and the grounds upon which it rests." To test the sufficiency of the complaint, the court must conduct a three-step inquiry.
>
> …
>
> In the first step, "the court must tak[e] note of the elements a plaintiff must plead to state a claim.'"
>
> …
>
> Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.
>
> …
>
> Once the Court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."

*Watson v. Witmer,* 183 F. Supp. 3d 607, 611 (M.D. Pa. 2016) (internal citations omitted).

In the pending matter, the Amended Complaint identifies three individual defendants: Eric Henry; Wayne Brosius and Jill Foys. The scant allegations do not identify with any specificity what each of these Individual Defendants did or failed to do to violate Plaintiff's rights, which she alleges occurred under the First and Fourteenth Amendments. Instead, Plaintiff employed a shotgun pleading approach by accusing the Individual Defendants of violating her Constitutional rights without more.

Notably, the Amended Complaint contains no facts whatsoever concerning Wayne Brosius beyond that he is a board member. (Am. Compl. at ¶4). While Mr. Henry and Ms. Foys are to have participated in the "strategic planning meeting" at a restaurant with Plaintiff on July 2, 2025

and Ms. Foys was at a July 18, 2025 meeting, wherein Plaintiff objected to certain conduct, there are no facts plead as to how she was terminated, let alone how these three Individuals Defendants had personal involvement in her termination, which resulted in retaliation under the First and Fourteenth Amendments.  While Plaintiff avers that Mr. Henry stated that "if she wanted to look for other employment" Mr. Henry would be supportive, such statement does not equate to a personal involvement in a violation of her constitutional rights.  *See* Am. Compl. at ¶ 16.  Based on the absence of specific facts as to the individual conduct of each Individual Defendant, there are insufficient facts to show a plausible claim for relief exists.  Accordingly, the Individual Defendants must be dismissed with prejudice.

### D.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Alternatively, the Individual Defendants should be dismissed on the grounds of qualified immunity.  The doctrine of qualified immunity protects government officials sued in their individual capacities from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See *Pearson v. Callahan*, 555 U.S. 223 (2009).  Qualified immunity is more than a mere defense to liability: It is "an entitlement not to stand trial or face other burdens of litigation," such that a determination of whether qualified immunity applies should be made as early as practicable in litigation.  See *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In *Saucier*, the United States Supreme Court articulated a two-step test for analyzing claims of qualified immunity.  The Court held that a trial court must first determine whether the facts alleged show that a defendant's conduct violated a constitutional or statutory right.  533 U.S. at 201.  If so, the trial court then must determine whether the constitutional or statutory right allegedly violated by a defendant was clearly established.  *Id.*  Only if the trial court concludes

that a defendant's conduct did violate a clearly established constitutional or statutory right, must it deny a defendant the protection afforded by qualified immunity. *Id.* In *Pearson*, *supra*, the Court expanded the test, holding that trial courts are permitted to exercise flexibility and sound discretion in deciding which of the prongs should be addressed first "in light of the circumstances in the particular case at hand." 555 U.S. at 236.

In the present matter, the facts alleged in Plaintiff's Amended Complaint, even when construed in a light most favorable to her, do not demonstrate any conduct on the part of the Individual Defendants giving rise to the violation of a constitutional or statutory right. *Saucier*, 533 U.S. at 201. As elaborated upon in the previous section, Plaintiff has failed to make any allegations whatsoever of personal involvement by the Individual Defendants. Arguably, Plaintiff has furthermore failed to make any allegations of official involvement by the Individual Defendants. Thus, the allegations Plaintiff has made, even when considering all reasonable inferences that may be drawn therefrom, simply do not establish a plausible claim for relief against the Individual Defendants. As such, Plaintiff's claims against Individual Defendants are barred by qualified immunity and should be dismissed with prejudice.

**E.    PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES FAIL AS A MATTER OF LAW.**

Plaintiff's request for punitive damages under Count I (Whistleblower) and Count II (Constitutional Claims) fail as a matter of law. First, punitive damages are not available under the Whistleblower law. *See Rankin v. City of Philadelphia*, 963 F.Supp. 463, 478 (E.D. Pa. 1977) (explaining that Whistleblower Law "sets forth a comprehensive list of available remedies" and punitive damages are "nowhere among" them).

Second, even if the Court were to conclude that the individuals are "state actors" – bringing this matter within a Section 1983 analyses, a request for punitive damages against such individuals

18

working in their official capacities is improper.  The Supreme Court has held that punitive damages may not be recovered against a governmental entity in an action brought under 42 U.S.C. §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  The rationale behind such a prohibition is two-fold.  There is little deterrent effect, if any, of awarding punitive damages against municipalities in lieu of the actual offenders, and the damages would not be borne by the responsible officials, but would be visited upon the shoulders of blameless or unknowing taxpayers.  *Id*.  As a result, all punitive damage claims against the individual defendants should be stricken and dismissed.

## V.      CONCLUSION

For all the reasons set forth herein, this Partial Motion to Dismiss should be granted. Moreover, Defendants request that this Court deny Plaintiff leave to amend.  The court may deny leave to amend if equitable considerations render it unjust.  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citation omitted).  "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility."  *Id*.  Defendants requested that Plaintiffs amend to avoid the need for the pending motion.  Plaintiff refused to meaningfully consider the defects raised by Defendants in the meet and confer, which has caused needless time and expense for Defendants and this Honorable Court.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY:      */s/ Estelle K. McGrath*
ESTELLE K. McGRATH, ESQUIRE
PA ID #87799
**Counsel for Defendants**
Union Trust Building
501 Grant Street, Suite 700
Pittsburgh, PA  15219
(412) 803-1186 // (412) 803-1188 fax
ekmcgrath@mdwcg.com